IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-01214-PAB-KMT

GENE E. BOLLES, M.D.,

    Plaintiff,

v.

PRINCIPAL LIFE INSURANCE COMPANY,

    Defendant.

---

# ORDER

---

This matter comes before the Court on Defendant Principal Life Insurance Company's Motion to Dismiss Plaintiff's Complaint in Its Entirety with Prejudice Pursuant to Rule 12(B)(6) [Docket No. 10] and Defendant Principal Life Insurance Company's Amended Memorandum of Law in Support of Its Motion to Dismiss [Docket No. 15]. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This case arises out of a dispute over long term disability benefits. Plaintiff is a neurosurgeon employed by the Denver Health and Hospital Authority. Docket No. 4 at 4-5, ¶ 2. On November 21, 2016, plaintiff became disabled when he was no longer able to perform the duties of his job. *Id.* at 5, ¶ 3. At the time plaintiff became disabled, the Denver Health and Hospital Authority had an insurance policy with Principal Life

---

[1]The facts below are taken from plaintiff's complaint, Docket No. 4, and are presumed to be true for purposes of this motion to dismiss.

Insurance Company that provided plaintiff with short term and long term disability benefits. *Id.*, ¶ 4. Plaintiff was approved for short term disability benefits through May 20, 2017. *Id.*[2]

On March 24, 2017, plaintiff received a letter from defendant approving his application for long term disability benefits. *Id.*, ¶ 5; *see also id.* at 9 (Exhibit A). The letter stated that "[s]ince [plaintiff was] over the age of 72 when [he] ceased work the Long Term Disability policy limit[ed] the maximum duration of benefits to 12 months." *Id.* at 9-10. In an email to the adjuster, plaintiff challenged the one-year limitation on the ground that the "own occupation" provisions of the insurance policy entitled plaintiff to long term disability benefits for two years. *Id.* at 5, ¶ 6. The policy defines "own occupation" as "[t]he occupation you are routinely performing when Disability begins" and "Own Occupation Period" as "[t]he first two year(s) of the Benefit Payment Period." *Id.* at 6, ¶¶ 8, 10. "Own Occupation Period" is further listed in the "Long Term Disability Insurance Summary" next to the phrase "two year(s)." *Id.* at 5-6, ¶ 7; *see also id.* at 18.[3]

---

[2]Plaintiff's allegation that he was approved for short term disability benefits through May 20, 2016 appears to be a typographical error, as plaintiff did not become disabled until November 21, 2016. *See* Docket No. 4 at 5, ¶ 3.

[3]Plaintiff also alleges that (1) "[u]nder the 'own occupation period' [in the policy summary] it states that benefits will be paid for 'two year(s),'" and (2) "a person such as the plaintiff who is disabled and unable to perform the essential duties of his 'own occupation' is entitled to benefits for two years." Docket No. 4 at 5-6, ¶¶ 7, 11. Because these allegations represent unwarranted factual inferences or legal conclusions, the Court need not accept them as true for purposes of defendant's motion to dismiss. *See Thomas v. N.M. Corrs. Dep't*, 272 F. App'x 727, 729 (10th Cir. 2008) (unpublished) (stating that court at motion to dismiss stage is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions" (quoting *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994))).

On April 3, 2017, the adjuster sent plaintiff a letter rejecting his appeal. *Id.* at 5, ¶ 6; *see also id.* at 22. The letter did not address the "own occupation" language of the policy. *Id.* at 5, ¶ 6; *see also id.* at 22.

Plaintiff filed this lawsuit in the District Court for the City and County of Denver, Colorado on or about April 24, 2017. Docket No. 1 at 1; *see also* Docket No. 1-1 at 2-3. On May 17, 2017, defendant removed the case to this Court on the basis of diversity jurisdiction. Docket No. 1 at 2-3. In his complaint, plaintiff seeks a declaratory judgment that he is entitled to long term disability benefits for a period of two years under the terms of defendant's insurance policy. Docket No. 4 at 4.[4] On May 24, 2017, defendant filed a motion to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Docket No. 10. Defendant filed an amended memorandum of law in support of that motion on June 7, 2017. Docket No. 15. Plaintiff filed a response on June 13, 2017, Docket No. 18, to which defendant replied on June 27, 2017. Docket No. 22.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiffs' "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing

---

[4]Although plaintiff seeks a declaratory judgment pursuant to Colorado's Uniform Declaratory Judgments Act, Colo. Rev. Stat. § 13-51-101 *et seq.*, and Colo. R. Civ. P. 57, "federal law determines whether a district court may properly enter a declaratory judgment" in a diversity case. *Addison Ins. Co. v. Maynard*, 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2 (D. Colo. May 15, 2008). Plaintiff's underlying claim that defendant breached the terms of the insurance policy is, however, governed by state law. *See id.* at *2 n.1 (noting that "Colorado state law applies to the underlying substantive issues").

3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks omitted).

## III. ANALYSIS

Defendant argues that plaintiff has failed to state a claim for which relief can be granted under Rule 12(b)(6) because the insurance policy unambiguously limits the duration of long term disability benefit payments to 12 months for a person of plaintiff's age. Docket No. 15 at 1. In response, plaintiff contends that his long term disability benefits were governed by the "own occupation" provisions of the insurance policy, which provide for a benefits period of two years. Docket No. 18 at 5-8.

In Colorado, "[t]he interpretation of an insurance contract is a question of law" to which traditional principles of contract interpretation apply. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005); *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).[5] Thus, courts construing the terms of an insurance policy

---

[5]The parties do not cite to any choice-of-law provision in the insurance policy, but they appear to agree that Colorado law governs the interpretation of the insurance policy. *See generally* Docket No. 15 at 5-7 (citing Colorado law governing the interpretation of insurance contracts); Docket No. 18 at 3-5 (same). The Court will operate under the same premise. *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies,

4

must "give effect to the intent and reasonable expectations of the parties." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). This means affording words in the policy "their plain meaning according to common usage" and avoiding "strained constructions." *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). When policy language is ambiguous – i.e., when it is "reasonably susceptible on its face to more than one interpretation" upon evaluation of the policy as a whole, *State Farm Mut. Auto Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997) – it must be "construed against the insurer . . . and in favor of the insured." *Id.* at 390.

The parties' dispute centers on the relationship between two sets of provisions in the insurance policy – the "Benefit Payment Period" provisions and the "Own Occupation" provisions.[6] The policy defines "Benefit Payment Period" as "[t]he period of time during which benefits are payable." Docket No. 18-1 at 8. Section M, Article 1 of the policy, which is entitled "Benefit Payment Period," further provides that, "if Disability begins at or after age 65," benefits are payable "until the later of the date of Social Security Normal Retirement Age, or the date of completion of the number of months shown below after the Benefit Payment Period begins." Docket No. 4 at 13.[7]

---

we will proceed under the same assumption.").

[6]In resolving defendant's motion to dismiss, the Court will consider those portions of the insurance policy that were submitted by plaintiff in conjunction with his complaint and response to defendant's motion to dismiss. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (stating that a court evaluating a motion to dismiss "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" (internal quotation marks omitted)).

[7]Plaintiff does not dispute that he was 79 years old when he became disabled. *See* Docket No. 4 at 22.

5

The table immediately below this provision reads as follows:

| Member's Age on the Date Disability Begins | Months of the Benefit Payment Period (Beginning with the date the Benefit Payment Period begins) |
|---|---|
| 65-67 | 24 |
| 68-69 | 18 |
| 70-71 | 15 |
| 72 and over | 12 |

*See id.* at 14.  The policy then lists a number of events – such as the policyholder's death, the end of the policyholder's disability, or the policyholder's failure to submit required proof of disability – that will terminate benefit payments regardless of the Benefit Payment Periods identified in the table.  *See id.*  The Benefit Payment Periods table is reproduced in the "Long Term Disability Insurance Summary" next to the heading "Maximum Benefit Payment Period."  *See id.* at 18; Docket No. 18-1 at 4.

In addition to the "Benefit Payment Period" provisions, the policy contains a number of provisions including the phrase "own occupation."  The policy defines "Own Occupation" as "[t]he occupation you are routinely performing when Disability begins.  Own Occupation does not mean the specific tasks or job you are performing for the Policyholder or at a specific location."  Docket No. 18-1 at 10.  The policy further defines "Own Occupation Period" as "[t]he first two year(s) of the Benefit Payment Period."  *Id.* at 11.  The terms "Own Occupation" and "Own Occupation Period" appear in the policy's definition of disability, which provides:

> You will be considered Disabled if, solely and directly because of sickness, injury, or pregnancy:

> During the Elimination Period and the Own Occupation Period, one of the following applies:
>
> a. You cannot perform the majority of the Substantial and Material Duties of your Own Occupation.
>
> b. You are performing the duties of you Own Occupation on a Modified Basis or any occupation and are unable to earn more than 80% of your Indexed Predisability Earnings.
>
> After completing the Elimination Period and the Own Occupation Period, one of the following applies:
>
> a. You cannot perform the majority of the Substantial and Material Duties of any occupation for which you are or may reasonably become qualified based on education, training, or experience.
>
> b. You are performing the Substantial and Material Duties of your Own Occupation or any occupation on a Modified Basis and are unable to earn more than 60% of your Indexed Predisability Earnings.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute a disability.

*Id.* at 8-9. "Own Occupation Period" is also listed in the "Long Term Disability Insurance Summary" next to the phrase "two year(s)." *Id.* at 4.

Defendant argues that the policy language unambiguously limits the Benefit Payment Period to 12 months for individuals who are 72 years or older on the date their disability begins, regardless of the "Own Occupation" provisions. Docket No. 15 at 7-8. The Court agrees. Evaluating the policy as a whole, it is clear that the "Benefit Payment Period" and "Own Occupation" provisions serve two different functions. The "Benefit Payment Period" provisions govern the amount of time for which benefits are payable under the policy. In contrast, the "Own Occupation" provisions help to define a sliding scale for when an individual will be considered disabled. When read together,

7

the provisions establish that an individual who is 72 years of age or older will be considered disabled and thus eligible to receive long term disability benefits if, during the initial period of the claimed disability, he "cannot perform the majority of the Substantial and Material Duties of [his] Own Occupation" or he is "performing the duties of [his] Own Occupation on a Modified Basis or any occupation and [is] unable to earn more than 80% of [his] Indexed Predisability Earnings." Docket No. 18-1 at 9. After that initial period (which is comprised of a 180-day Elimination Period plus the 2-year Own Occupation Period), the requirements for disability become more stringent. Thus, an individual will only continue to qualify as disabled if he "cannot perform the majority of the Substantial and Material Duties of *any occupation for which [he is] or may reasonably become qualified* based on education, training, or experience" or is "performing the Substantial and Material Duties of [his] Own Occupation or any occupation on a Modified Basis and [is] unable to earn more than *60%* of [his] Indexed Predisability Earnings." *Id.* at 9 (emphasis added). Thus, the requirements for continued benefits eligibility are heightened in two respects after the expiration of the Own Occupation Period: (1) the policyholder must be unable to perform any occupation, not simply the job he was performing at the time his disability began; and (2) the policyholder must be unable to earn more than 60% of his predisability earnings, not just 80%.

The "Benefit Payment Period" provisions exist separately from these requirements. Rather than defining the period of disability, the Benefit Payment Period caps the number of months an individual may receive long term disability benefits based on the individual's age at the time the disability began. The cap is not defined

according to the period of disability, as indicated by the "Benefit Payment Period" provision, which states that, notwithstanding the age-based limits on the Benefit Payment Period, "in no event [ ] will benefits continue beyond . . . the date Disability ends." Docket No. 4 at 14.

Plaintiff reads the policy as establishing a separate two-year Benefit Payment Period for those qualifying as disabled under the "Own Occupation" provisions. Plaintiff makes four principal arguments in support of this interpretation. First, he contends that the "Own Occupation" definition of disability is the only category of disability that has a separate heading in the "Long Term Disability Insurance Summary," which "contains limits on the time periods during which benefits will be paid." Docket No. 18 at 6. Because "two year(s)" is listed under the heading "Own Occupation Period," plaintiff interprets the summary as stating "that the benefit period for 'Own Occupation' disabilities is two years." *Id.* There are two flaws in this argument. As an initial matter, the summary is meant to be an overview of all key terms in the insurance policy. The first column of the summary, which lists "Own Occupation Period," also includes terms such as "Minimum Hours Requirement," "Who Pays for Coverage," and "Elimination Period." Docket No. 18-1 at 4. Neither these terms nor the information provided in conjunction with these terms – e.g., "Employees must be working at least 20 hours a week"; "You are not required to pay a part of the premium for insurance under the Group Policy"; and "180 days" – relate to "limits on the time periods during which benefits will be paid." *Id.* Thus, the mere inclusion of "Own Occupation Period" in the policy summary does not support a conclusion that the "Own Occupation Period" defines the period in which benefits will be paid for those qualifying under the "Own

Occupation" provisions. The second flaw in plaintiff's argument is that the summary does not state that the "benefit period for 'Own Occupation' disabilities is two years." Docket No. 18 at 6. Plaintiff draws this inference based on the fact that "two year(s)" is listed under the heading "Own Occupation Period." *See* Docket No. 4 at 18. Yet the same could be said of the "180 days" listed under "Elimination Period," but plaintiff makes no contention that 180 days reflects a shorter benefits period for certain policyholders.

Plaintiff next asserts that he is entitled to a two-year benefits period under the policy because the definition of "Own Occupation Period" does not refer to the age-related limitations on the "Maximum Benefit Period," and the provisions concerning the "Maximum Benefit Period" do not refer to the "Own Occupation Period." Docket No. 18 at 6. However, the fact that the provisions do not cross-reference each other supports, rather than undermines, a conclusion that the "Own Occupation" provisions have no bearing on the maximum benefit period under the policy.

This conclusion is further bolstered by the definition of "Own Occupation Period." In his third argument, plaintiff cites the definitions of "Own Occupation" and "Own Occupation Period" as evidence that the one-year age-related limitation on benefits does not apply to disabilities based on the inability to perform one's "own occupation." Docket No. 18 at 7. To the contrary, by defining "Own Occupation Period" as "[t]he first two year(s) of the Benefit Payment Period," the policy not only establishes that the "Own Occupation Period" is distinct from the maximum period in which benefits are payable, but also incorporates the applicable "Benefit Payment Period" as a limitation on the "Own Occupation Period." Docket No. 18-1 at 11.

Plaintiff's final argument is that defendant's interpretation of the policy would render the two-year "Own Occupation Period" meaningless, thereby violating the general rule that contracts should be construed so as to give effect to every provision. *See Pub. Utils. Comm'n v. City of Durango*, 469 P.2d 131, 133 (Colo. 1970) ("It is a familiar rule of contract construction that a contract is to be construed as a whole and effect given, if possible, to its every provision."). Again, however, plaintiff ignores the separate purposes served by the "Own Occupation" and "Benefit Payment Period" provisions: while the "Own Occupation" provisions help to define the varying requirements for when an individual will be considered disabled, the "Benefit Payment Period" provisions, including the "Maximum Benefit Payment Period," govern the amount of time for which benefits are payable under the policy regardless of whether an individual qualifies as disabled. There is thus no conflict between these provisions even if, in some circumstances, the "Maximum Benefit Payment Period" will limit the "Own Occupation Period" applicable to the policyholder.

Because the insurance policy, read as a whole, unambiguously limits plaintiff's entitlement to long term disability benefits to a period of one year, plaintiff has failed to present a plausible basis for relief.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Principal Life Insurance Company's Motion to Dismiss Plaintiff's Complaint in Its Entirety with Prejudice Pursuant to Rule 12(B)(6) [Docket No. 10] is **GRANTED**. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED September 12, 2018.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge